CLAUDE MORRIS CHURCH v. EDWARD POWELL, COMMISSIONER OF MOTOR VEHICLES

No. 7823SC290

(Filed 6 March 1979)

1. **Criminal Law § 75.7— statement at service station—no custodial interrogation**

Petitioner's statement to an officer that he had been driving a car at the time it wrecked, made at a service station in response to a question by the officer, *did not result from custodial interrogation where petitioner was not placed under arrest until petitioner admitted he was driving the car and until after the officer observed what he considered to be petitioner's intoxicated condition, and the Miranda warnings were not required.*

2. **Automobiles § 2.4— refusal to take breathalyzer test—probable cause for arrest for drunk driving**

A patrolman had probable cause to believe that petitioner had been driving while under the influence of intoxicants, and petitioner's driver's license

Church v. Powell, Comr. of Motor Vehicles

was properly revoked under G.S. 20-16.2 for willfully refusing to submit to a breathalyzer test, where petitioner wrecked his automobile and then went to a nearby service station where he drank three drinks, each of which contained three to four ounces of liquor; petitioner had been drinking heavily the day before the wreck and had a drink at 4:00 p.m. before wrecking his automobile at 7:30 p.m.; and the patrolman saw petitioner at the service station an hour after the wreck and petitioner stated that he was driving the car when it wrecked.

APPEAL by respondent from *Kivett, Judge.* Judgment entered 15 December 1977 in Superior Court, WILKES County. Heard in the Court of Appeals 6 December 1978.

This case arose from a petition for judicial review of a decision of the North Carolina Department of Motor Vehicles revoking petitioner's driver's license for wilfully refusing to submit to a breathalyzer test pursuant to G.S. 20-16.2. At the hearing in Superior Court, petitioner was called as a witness. His testimony is as follows. He had an automobile accident about 7:30 p.m. on 2 January 1976. He had been drinking heavily the day before. He had had a couple of drinks on the day of the wreck, the last one being at 4:00 p.m. After the accident, he went to a nearby service station and drank three drinks. Each drink contained approximately three to four ounces of liquor. About an hour after the accident a highway patrolman approached him at the service station and asked him if he were Morris Church and the owner and operator of the wrecked car. The petitioner told the patrolman that he had been driving at the time of the wreck. The patrolman arrested petitioner on a charge of operating a motor vehicle on a public highway while under the influence of intoxicating liquor. He was taken before a breathalyzer operator and fully advised of his rights. He refused to take a breathalyzer test because he had been drinking after the accident and before the patrolman saw him. He appeared in court on the charge of driving while under the influence and entered a plea of guilty to a charge of reckless driving.

Respondent also offered the testimony of Trooper Sluder which tended to show that petitioner, after being arrested on the charge of driving while under the influence and after being fully advised of his choices, wilfully refused to take the test. Respondent also, without objection by petitioner, introduced as an exhibit an affidavit executed by the arresting officer stating that he

had probable cause to believe that on 2 January 1976, defendant unlawfully operated a motor vehicle on the highway while under the influence of intoxicating liquor. The exhibit also contained the magistrate's finding of probable cause on that charge.

The court entered, among others, the following conclusions:

"1. There is no evidence that Trooper B. L. Byrd had probable cause or reasonable grounds that the petitioner was under the influence of alcohol at the time he had the accident which gave rise to the trooper being present at 8:20 P.M. at the scene of the accident and at the bathroom where the petitioner was at the time the officer asked him if he was operating one of the motor vehicles involved in the accident.

2. There is no evidence that the petitioner was under the influence of alcohol at 7:20 P.M. or at any other time material to this controversy.

3. The petitioner not having been advised of his constitutional rights under the Miranda decision at the time of the one-on-one confrontation of the trooper and the petitioner in the bathroom constituted a violation of the petitioner's constitutional rights under the Miranda decision."

The court then entered an order restraining respondent from suspending petitioner's driving privileges.

*Attorney General Edmisten, by Deputy Attorney General Jean A. Benoy, for respondent appellant.*

*No brief was filed for petitioner.*

VAUGHN, Judge.

[1] The judgment is not supported by either the evidence, which is uncontradicted, or the applicable law. In the first place, it is not necessary to reach the question of whether the patrolman should have advised petitioner of his *Miranda* rights before asking if his name was Morris Church and whether he was the owner and operator of the wrecked car. In the hearing we are now called upon to review, the testimony that petitioner told the patrolman that he had been driving the car at the time of the wreck not only came without objection, it came voluntarily from the lips of the

Church v. Powell, Comr. of Motor Vehicles

petitioner. It was, therefore, perfectly competent on the question of whether the patrolman had probable cause to believe that petitioner was operating the car at the time it was wrecked. Moreover, it is clear that petitioner's statement would not have been subject to exclusion at petitioner's criminal trial for the principal offense. It was only after petitioner admitted that he was driving the car when it wrecked and after the officer observed what he considered to be petitioner's intoxicated condition, that he was placed under arrest. The statement was not elicited as a part of a custodial interrogation, and the *Miranda* warnings were not required. *See, e.g., State v. Sykes,* 285 N.C. 202, 203 S.E. 2d 849 (1974); *State v. Carlisle,* 25 N.C. App. 23, 212 S.E. 2d 217, *cert. den.,* 287 N.C. 261, 214 S.E. 2d 433 (1975); *State v. Tyndall,* 18 N.C. App. 669, 197 S.E. 2d 598, *cert. den.,* 284 N.C. 124, 199 S.E. 2d 662 (1973).

[2]  The court's conclusion that "[t]here is no evidence that the petitioner was under the influence of alcohol at 7:20 P.M. or at any other time material to this controversy," is not only inaccurate, it is to some degree irrelevant. At the revocation hearing, it was not the court's duty to try petitioner for the offense; the only question was whether the patrolman had probable cause to believe that petitioner had been driving while under the influence. Petitioner's own testimony shows the following. He had been drinking heavily on the day before the wreck. He had a drink at 4:00 p.m. and wrecked his automobile at 7:30 p.m. The patrolman saw him less than one hour after he had consumed an additional nine to twelve ounces of liquor, and he then told the patrolman he was driving the car when it wrecked. Surely these circumstances constituted some evidence to support the patrolman's affidavit (introduced without objection) that he had probable cause to believe that petitioner had operated an automobile while under the influence of alcohol.

The judgment from which respondent appealed is vacated, and the case is remanded.

Vacated and remanded.

Judges MARTIN (Robert M.) and ARNOLD concur.